Argued November 18, 1896; decided January 18, 1897; rehearing denied.

## HOLMAN v. DeLIN.
### (47 Pac. 708.)

WAIVER OF MOTION BY DEMURRING.—A motion to strike out parts of an answer is waived by the subsequent filing and hearing of a demurrer thereto.

QUESTION RAISED BY APPEAL.—Where a demurrer to a part of an answer has been overruled, and the parties have gone to trial, an appeal by defendant from a judgment against him does not bring to the appellate court the question of the sufficiency of the answer.

LANDLORD AND TENANT.—An action for the use and occupation of real property must be supported by a contract of leasing, either express or implied.

LANDLORD AND TENANT—CODE, §§ 2984, 2985.*—The provisions of sections 2984 and 2985, Hill's Code, do not create a right which gives rents, but prescribe a remedy, and relate to the recovery of rents when due, and must be based upon subsisting conventional relations: *Stewart* v. *Perkins,* 3 Or. 508, cited and approved.

LANDLORD AND TENANT—ASSIGNMENT OF LEASE—CANCELLATION.—A lessee who has assigned his interest in the lease to his co-tenant cannot, by afterwards paying the rent to the end of the term, and taking an assignment to himself of the interest of the lessor, recover on the lease from his co-tenant, or a tenant of his co-tenant, the amount of rent so paid by him, as by such payment all obligations under the lease are discharged.

PRESUMPTION CONCERNING TENANT.—The occupant of premises for which there is an outstanding lease, if not the lessee himself or his assignee, is presumed to be a sub-tenant in some degree of the original lessee.

LIABILITY OF SUB-TENANT FOR RENT.—A sub-tenant is not answerable to the original lessor for the rental, as there is neither privity of estate or contract between them.

FORFEITURE OF LEASE BY BREACH OF CONDITION.—Breach of a condition in a lease against assigning or sub-leasing without permis-

---

*NOTE.—These sections read as follows: "2984. Every person in possession of land out of which any rent is due, whether it was originally demised in fee, or for any other estate of freehold, or for any term of years, shall be liable for the amount or proportion of rent due from the land in his possession, although it be only a part of what was originally demised." "2985. Such rent may be recovered in an action at law, and the deed of demise, or other instrument in writing, if there be any, showing the provisions of the lease, may be used in evidence by either party, to prove the amount due from the defendant."
—REPORTER.

sion of the lessor does not avoid the lease, except at the option of the lessor, shown by re-entry.

From Multnomah:   E. D. SHATTUCK, Judge.

Action by Edward Holman against the DeLin-River-Finley Co., a corporation, John P. Finley, and C. R. Rieger to recover under a certain lease assigned to him by T. L. Ray and others.   The facts are fully stated in the opinion. There was a judgment against the corporation and J. P. Finley, from which they have prosecuted this appeal.

REVERSED.

For appellants there was a brief over the names of *Bronaugh, McArthur, Fenton & Bronaugh,* and *Deady & Metcalf,* with oral arguments by *Messrs. Earl C. Bronaugh* and *Wm. D. Fenton.*

For respondents there was a brief over the names of *Glen O. Holman,* and *Dolph, Mallory & Simon,* with oral arguments by *Messrs. Holman* and *Rufus Mallory.*

Opinion by MR. JUSTICE WOLVERTON.

The basis of plaintiff's action is a claim or demand for rent for use and occupation of certain premises, situate in the City of Portland, from October 1, 1893, to January 4, 1895, at a monthly rental of $200, payable in advance, alleged to have been assigned to him by T. L. Ray, R. L. Ray, H. Ray, Sarah Ray, J. D. W. Ray, and Mary Arbuckle, who were and are the owners of said premises as joint tenants.   To defeat the action, defendants answer that on September 25, 1889, the owners executed a lease of said premises to the plaintiff and the defendant DeLin, who were then partners as DeLin & Holman, for the term of five years, beginning with March 1, 1890, at a monthly rental of $200, which the said DeLin & Holman undertook

to pay on the first day of each and every month during the term; that about December 2, 1892, DeLin & Holman dissolved their co-partnership, and Holman assigned to DeLin his one-half interest in the business theretofore carried on by them as such partners, and the aforesaid lease, and that thereafter DeLin remained in the possession and occupancy of the premises under the lease, but did not undertake or assume by the assignment to pay the rent, nor did the lessors undertake to accept or receive DeLin as and for DeLin & Holman, but thereafter continued to collect from and enforce the conditions of the lease against both DeLin and Holman as their tenants; that thereafter, about September 25, 1893, the DeLin-River-Finley Company, a corporation, succeeded to the business of DeLin, and thenceforth occupied the premises under DeLin, and as his tenant, and not otherwise; that about December 27, 1894, the lessors instituted an action in the Circuit Court of the State of Oregon for Multnomah County against the plaintiff and DeLin upon the lease, to recover for rent then in default, aggregating $2,000, and that plaintiff thereupon paid and discharged his liability upon said lease, and by so doing relieved DeLin and every person whomsoever of liability for any rent due or to become due under the lease; but notwithstanding, plaintiff undertook to obtain from the lessors a transfer of the lease, and the right to recover for rent reserved, but that the said lease and liability thereunder has been wholly surrendered, satisfied, and discharged. The lease referred to in the answer was in fact executed by T. L. Ray alone. This the reply shows, and it is further alleged therein that defendants went into possession of the premises, and continued to occupy the same for the time set forth in the complaint, and to pay the owners thereof the rent for their use, and that such owners recognized and treated the defendants as their tenants during such time, and not the

plaintiff. A motion was interposed by plaintiff to strike out all the further and separate answer as sham and irrelevant, which was sustained, but it seems that a demurrer was subsequently filed in the same matter, heard and considered by the court, and overruled. At the trial, and after plaintiff had concluded the introduction of his evidence, the defendants moved for a non-suit, and after verdict moved for judgment non obstante, both which motions were overruled. The action of the court below in sustaining plaintiff's and overruling the defendants' said motions and in giving certain instructions duly excepted to, is assigned as error on the appeal.

The following facts may be regarded as having been proven at the time plaintiff rested his case in chief: That one B. B. Arbuckle was the agent for the owners of the building or premises, with authority to lease the same and collect the rents; that on the 25th day of September, 1889, Arbuckle, in the name of T. L. Ray, one of the joint owners, executed a lease, not under seal, to plaintiff, and the defendant DeLin, partners in business as undertakers as DeLin & Holman, purporting to let to them the entire interest in said building or premises for a term of five years, beginning March 1, 1890, at a monthly rental of $200, payable in advance, which they undertook and agreed to pay. DeLin and Holman occupied the premises to November 28, 1892, when Holman went out. Thereafter DeLin, River, and Finley occupied them as co-partners until September, 1893, when they incorporated as the DeLin-River-Finley Company, which corporation continued in possession until January, 1895, when it ceased to do business, and vacated the premises. In the meantime—about July, 1894—DeLin sold and transferred his stock or interest in the concern to the defendant Rieger. DeLin paid the rent for December, 1892, being the first coming due after Holman's retirement, which Arbuckle

says was paid to him before he knew that Finley had become a member of the company. Thereafter all payments of rent for the company or corporation were made by Finley, except $100 by DeLin. The rent was paid promptly to and inclusive of the month of August, 1893, but thenceforth the company dropped behind, paying the last item in October, 1894, which paid the rent in full to April 1, 1894. On December 15, 1894, Arbuckle called upon Holman for payment of back rent, then amounting to $1,800—which Holman says was the first time he had been called upon since he left the place—upon failing to pay which he was sued by T. L. Ray on the 26th, and in January, 1895, he paid the rent in full to the expiration of the term of the lease, amounting to $2,200, in consideration of which he took an assignment or release from all the joint owners of the premises, purporting to assign, set over, release, and quitclaim to him any claim that they, or either of them, jointly, or severally, had against DeLin, River, Finley, or Rieger, or either of them, either in their individual, copartnership, or corporate capacity, for rent of said building, and also any claim for rent due or to become due under the DeLin & Holman lease, which is attached to and made part of the assignment.

Arbuckle testified, in effect, that Finley always claimed to be trying to pay the rent, saying at one time that if he could sell some property in California he would straighten it up, and in May or June, 1894, he said that when Rieger got an interest in the company he expected to be able to pay in full, as he would bring money into the business. River and Finley objected to the receipts for rent being made to Holman & DeLin, and at their suggestion Arbuckle made them to "DeLin & Co.," after March 3, 1893, but continued to demand the rent of DeLin & Co. under the lease. The lessors, at the time they assigned to Holman, had not cancelled the lease, nor released DeLin and

Holman, or either of them. It was a question with them who was to pay the rent. Finley requested Arbuckle not to say anything about it to Holman, that he would pay it, and asked for a reduction, which was refused for fear it might invalidate the lease. The purpose of the assignment was to transfer whatever claim the assignors had to Holman, whether under the lease or otherwise. They claimed that DeLin & Holman were held under the lease, and it was a question whether Finley and Rieger were or not, and if they had any such claim against Finley & Co. they assigned it to Holman. W. C. Kolb testified that he heard a conversation between Finley and River, who claimed there was a clause in the lease prohibiting its assignment or transfer without the consent of the lessees. Finley said they were not responsible, but that they would go along and do the best they could; that he thought they would be able to pay the rent, and expected business to pick up, and that he did not want to move, as it would cost him a thousand dollars. The witness corroborates Arbuckle touching what Finley said to him about the payment of rent, and the reasons why he was unable to pay. On cross examination, he testified that they, Finley and River, said the rent was too much, and that they had gone to see Arbuckle to get him to reduce it, and that if they could not, and they could get a cheaper place, they would move out; that they were not responsible, and the lease would not hold them. They tried to get a place from the A. O. U. W. people, and failed. This is, in effect and substance, all the testimony offered by the plaintiff when he rested.

The motion to strike out was undoubtedly waived by the subsequent filing, hearing, and determination of the demurrer, and thereby treating it as not in the record; and, the demurrer having been overruled, the defendants' appeal does not bring here the question of the sufficiency of the answer, tested by either of these papers or documents.

Notwithstanding this, since it was so urgently insisted at the argument that the facts stated do not constitute a defense, and as preliminary to the cardinal question in the case—that of non-suit—we are constrained to make the inquiry whether the position is tenable.

We think the separate answer states a good defense. It shows that the right of action depends upon a written lease, wherein plaintiff is one of the lessees, while he sues in the right of the lesssors, which he claims by assignment from them after having himself paid all rent due or reserved under it to the end of the term.   The action is for use and occupation, and it must be supported by a contract of leasing, express or implied:  *Jennings* v. *Alexander*, 1 Hilt. 154; *Hurley* v. *Lamoreaux*, 29 Minn. 138 (12 N. W. 447).   Sections 2984 and 2985, Hill's Code, do not, as supposed, create a right which gives rents, but prescribe a remedy.   They relate to the recovery of rents when due, and must be based upon subsisting conventional relations: *Stewart* v. *Perkins*, 3 Or. 508; *Campbell* v. *Stetson*, 2 Met. (Mass.) 504.   By accepting the assignment of plaintiff's interest in the lease DeLin did not assume any additional or new liability to the lessors for the payment of rent, nor did they accept or receive him as their lessee in the place and stead of DeLin & Holman, but continued to treat both as their tenants.   Thus far, there could be no release of the liability of either DeLin or the plaintiff under the lease.   DeLin continued to occupy the premises until the corporation was formed, which took possession under DeLin as his tenant, and not as the tenant of the owners, nor as assignee of the term; but this did not change the rights and liabilities of the parties to and under the lease. Now, while the conditions were as delineated, the plaintiff, one of the lessees, prior to the expiration of the term, paid all rent reserved, whether due or to become due, took an assignment of the lease, and now sues by virtue of alleged

rights acquired from the lessors by the assignment. It is perfectly apparent that plaintiff has not acquired any such rights as will support the action. His payment of the rent reserved to the lessors discharged the obligation under the lease to pay rent as fully and completely as though DeLin or they together had paid it. The lessors thenceforth had no right of recovery in any form upon the lease by virtue of the particular obligation to pay rent; and the plaintiff, by the assignment, could acquire no higher right than they. The answer is a sort of reductio ad absurdum of plaintiff's position. He is placed in the light of acquiring the interest of the lessors for the purpose of suing himself, or, what is equivalent, his co-obligor upon the instrument, after he had discharged the obligation; the other defendants being the tenants of his co-obligor, and not of his assignors. It was also suggested that the answer is sham, in that the copy of the lease attached and made part of it shows that the leasing was between T. L. Ray, one of the joint tenants only, and DeLin & Holman, whereas it is alleged that it was executed by all the joint owners; but if the lease purporting to be of the whole interest is the source of plaintiff's title or right of action, he standing in the shoes of the lessors by virtue of the assignment, and the rent reserved having been paid and discharged by the plaintiff himself, the defense is complete. It shows such an outstanding lease so treated and considered as will preclude a recovery by the lessors against sub-tenants.

We come now to the question of non-suit. Ordinarily a prima facie case would be made in an action for use and occupation when occupancy has been shown, and an attornment with the rental value, or an agreement to pay a definite sum, and the proof herein offered is undoubtedly sufficient for that purpose. The reply, however, admits an outstanding lease—the same as set up by the answer—

but seeks to avoid its effect by alleging an occupancy by defendants under plaintiff's assignors, and an attornment to them for the use of the premises, and a recognition of the defendants by such assignors as their tenants.  This presupposes a surrender or nullification of the outstanding lease, although it is not in terms so alleged, as while such lease subsisted the plaintiff's assignors could not let to other parties.  They could not have two tenants at one and the same time: *Logan* v. *Anderson*, 2 Doug. (Mich.) 103.  It also appears from plaintiff's proof that such a lease was executed, and that plaintiff treated it as outstanding and subsisting by occupying the premises under it jointly with DeLin up to about November 28, 1892.  The evidence does not disclose what functions the lease performed after that date, or what was done with it, or how it was treated by *the parties concerned, except that plaintiff paid the rent under it, and took and accepted an assignment of it to himself; but it must be taken to have continued as subsisting and outstanding until the expiration of the term thereby created, unless it was shown to have been cancelled or surrendered by the act of the parties to it.  In this connection we may indulge a corollary presumption, and that is, when once it appears that there is an outstanding lease of premises, the occupant thereof, if not the lessee himself or his assignee, is the tenant of the rightful owner of the term, or, rather, that he is a subtenant in some degree of the original lessor.  Such a tenant is not answerable to the owner of the premises for the rental, because there is neither privity of estate nor of contract between them: *Jennings* v. *Alexander*, 1 Hilt. 154; *Simmons* v. *Fielder*, 46 Ala. 304; *McFarlan* v. *Watson*, 3 N. Y. 286; 1 Taylor's Landlord and Tenant, § 109; 2 Id. § 448. It was, therefore, incumbent upon the plaintiff to overcome in some manner these attendant presumptive conditions touching the incongruous lease *(Rehm* v. *Weiss,*

28 N. Y. Sup. 772; *Doty* v. *Gillett*, 43 Mich, 206); and the granting of the non-suit must depend upon whether the plaintiff has produced evidence from which a surrender of the same may be inferred. If he has, there was enough to go to the jury; otherwise not. A surrender may be effected by express agreement, or by operation of law. It takes place by operation of law when the parties, without express surrender, do some act which implies that they have mutually agreed to consider the surrender as made: 2 Taylor's Landlord and Tenant, § 512; *Beall* v. *White*, 94 U. S. 389; *Wheeler* v. *Walden*, 17 Neb. 122 (22 N. W. 346). There is no testimony here tending to establish an express surrender. Is there any from which one by operation of law may be inferred? To establish a letting by plaintiff's assignors to the defendants, it is shown that they, through their agent Arbuckle, collected the rents directly from the defendants, and that the later receipts were issued in the name of DeLin & Co., instead of DeLin & Holman, the original lessees. All this is competent as · evidence tending to show a leasing, but it is not of itself sufficient from which to infer the surrender of the subsisting repugnant lease theretofore executed by the plaintiff's assignors to himself and partner. The agent of the assignors positively refused to do anything which would have a tendency to release plaintiff from his liability, so there is here no intention on the part of the assignors to assent to a surrender. DeLin, the partner of plaintiff, surely did nothing from which the remotest inference could be drawn that he had agreed to such an act or transaction. Holman says he was not called upon for the rent for twenty-five months after he went out, which is very true, no doubt; but he recognized the subsistence of the lease at that time by paying the rent due, not only for the time which defendants had occupied the premises, but to the end of the term fixed thereby, which had not yet expired.

And, further than this, he treated the lease as a subsisting document by taking an assignment of it to himself. Instead of this testimony justifying an inference that the assignors of plaintiff and he had agreed to a surrender, it proves the very opposite—that there was absolutely no intention by either party to the lease, much less that there was a mutual understanding, that a surrender should take place. So we think the testimony offered failed to show a case sufficient to go to the jury, and the testimony for defendant was not more favorable to plaintiff.

It was argued that, as the lease contains covenants against an assignment or a sub-leasing by the lessees without the consent of the lessors, it was rendered void by reason of the assignment and the occupancy by the defendant company under DeLin, but these covenants were made for the benefit of the lessors, and it was incumbent upon them to re-enter in order to terminate the lease or revest the estate in them: *Shattuck* v. *Lovejoy*, 8 Gray, 204. It was not shown that they did this, and hence were not reinvested of their old estate. These conclusions render it unnecessary to examine the other questions made in the briefs and at the argument. The judgment of the court below will be reversed, and the cause remanded with directions to allow the non-suit.

                                        Reversed.

Decided November 9, 1896; rehearing denied.